2021 IL App (1st) 191371-U

No. 1-19-1371

Order filed March 23, 2021.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 16145 |
| | ) | |
| ALEXANDER VESEY, | ) | The Honorable |
| | ) | Sophia Atcherson, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Justices Pucinski and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where defendant's *pro se* "Motion for Leave to File [a] Successive Post Conviction Petition" actually presented an initial postconviction petition which was not docketed because defendant was denied leave to file it, the cause must be remanded for first stage postconviction proceedings.

¶ 2    Defendant Alexander Vesey appeals from the denial of his *pro se* "Motion for Leave to File [a] Successive Post Conviction Petition" under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)). On appeal, he contends that although he labeled his *pro se*

postconviction petition as successive, it was actually his initial petition and therefore the cause should be remanded so that the petition can be filed. For the following reasons, we vacate the order denying defendant leave to file the petition and remand for first stage postconviction proceedings.

¶ 3    Following a jury trial, defendant was found guilty of armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2010)) and sentenced to natural life in prison as a habitual criminal due to his previous Class X felony convictions (730 ILCS 5/5-4.5-95(a) (West 2010)). Because the facts of the case were detailed in our order on direct appeal (see *People v. Vesey*, 2018 IL App (1st) 151513-U), we relate only those facts relevant to the instant appeal.

¶ 4    Prior to trial, the State successfully moved to admit evidence of other crimes for purposes of establishing identity and *modus operandi*. The matter then proceeded to a jury trial.

¶ 5    Robert Hawkins testified that on the morning of August 21, 2011, he and his brother-in-law, Travis Miller, were in the kitchen of Hawkins's home in the 2200 block of West Polk Street in Chicago. At one point, Hawkins looked out a window overlooking the alley and saw a man surveying the backyard. Hawkins and Miller then proceeded to the garage where Hawkins opened the garage door, took out the garbage, and saw the same man walking towards him. Hawkins asked the man if he needed help. The man, who was three to five feet away, "immediately" drew a firearm from his left pocket and pointed it at Hawkins. Hawkins saw "almost all" of the firearm, including the "top portion" protruding from the man's hand. The man told Hawkins to return to the garage and then waived two other men into the garage. At trial, Hawkins identified defendant as one of these men. Defendant patted down Miller and Hawkins and took items from their pockets. The men then ran toward Polk, where Hawkins saw them enter a silver vehicle and drive away. Hawkins contacted the police and later identified defendant and another offender in a lineup.

¶ 6 During cross-examination, Hawkins testified that although defendant did not point a firearm at him, defendant said "some threatening things" while going through Hawkins's pockets. He described the first man's firearm as small and silver. When asked what type of firearm it was, Hawkins replied, "I'm not a gun person. Sorry." Trial counsel then asked, "So you don't even know if it's a real [firearm]?" and Hawkins responded, "No."

¶ 7 Renato Catoc, the State's identity and *modus operandi* witness, testified that on the morning of September 8, 2011, he and his brother, Raymondo, were driving in an alley by their house in the 4600 block of West Schubert Avenue in Chicago, when a SUV passed them. Catoc parked in his garage and began unloading groceries. At this point, three black men approached him. At trial, Catoc identified defendant as one of these men. Defendant, who was holding a chrome firearm, demanded money. Catoc described the firearm as about five inches long. Defendant took Raymondo's wallet, and another man took Catoc's wallet. The three men then left. Catoc spoke to the police and later identified defendant in a lineup.

¶ 8 During cross-examination, Catoc admitted he did not know "a lot" about firearms, but "always" saw them. Trial counsel then asked, "So you don't actually know if it was a real gun, is that true?" and Catoc responded, "No, I can't be sure. But *** it look[ed] like a real gun."

¶ 9 Ruben Gonzalez, Catoc's neighbor, testified that on the morning of September 8, 2011, he saw three black men exit Catoc's garage, and run to a vehicle parked "three doors down." Gonzalez called 911 and reported the vehicle's license plate.

¶ 10 Chicago police sergeant Dominic Ciccola testified that in September 2011 he was investigating "an emerging crime pattern of armed robberies," and responded to the Catoc robbery. After receiving a description of the vehicle, he determined it was rented from Enterprise and

registered to a certain address. Ciccola relocated to that address where he observed and arrested a co-offender. After Ciccola spoke to the co-offender, defendant was arrested.

¶ 11    The State rested, and defendant did not present any evidence. Pursuant to defendant's request, the trial court agreed to instruct the jury on the lesser-included offense of robbery. During closing arguments trial counsel submitted, in pertinent part, that no firearm was presented to the jury, and that both Hawkins and Catoc said "they don't know if it was a gun." In rebuttal, the State argued that Hawkins and Catoc "said it looked like a gun," the offenders "held it like a gun," and "[e]veryone acted like it was a gun."

¶ 12    The trial court instructed the jury and it retired to deliberate. Around 20 minutes later, the jury sent a note requesting a copy of the trial transcript and asking the trial court to "Clarify on what a firearm is for armed robbery. Example, if it were a cap gun that looks like real, is it a firearm?" For the first question, the court stated that due to the time it would take to create the transcript, between two and four hours, the jury should rely on its own recollection of the evidence. For the second question, the court stated it would provide the definitional instruction for "firearm" contained in Illinois Pattern Jury Instructions, Criminal, No. 18.07(A) (4th ed. 2000). Neither party objected to the trial court's proposed responses.

¶ 13    The jury found defendant guilty of armed robbery with a firearm. Defendant was then sentenced to life in prison as a habitual criminal.

¶ 14    On direct appeal, defendant contended that the State failed to establish beyond a reasonable doubt that the firearm at issue met the statutory definition of "firearm," he was entitled to a new trial because the trial court and trial counsel failed to provide the full definitional instruction of "firearm" in response to the jury question, he was ineligible for sentencing as a habitual offender,

and the habitual offender statute was unconstitutional. We affirmed defendant's conviction and sentence. See *People v. Vesey*, 2018 IL App (1st) 151513-U.

¶ 15 On May 14, 2019, defendant filed a *pro se* "Motion for Leave to File [a] Successive Post Conviction Petition, Pursuant to 725 ILCS 5/122-1(f)," alleging that he was not proven guilty beyond a reasonable doubt when the State failed to establish that the "object" identified as a firearm met the statutory definition of a firearm. The petition further alleged that defendant was entitled to a new trial when the trial court and trial counsel failed to provide "the full definitional instruction" after the jury requested clarification as to whether the State was required to prove that the firearm at issue qualified as a firearm under Illinois law, and that trial counsel's failure to request such an instruction denied him effective assistance. On May 28, 2019, the circuit court denied defendant leave to file the *pro se* postconviction petition.

¶ 16 On appeal, defendant contends that although he filed a *pro se* motion titled "Motion for Leave to File [a] Successive Post Conviction Petition," he actually attempted to file an initial postconviction petition. He therefore requests that the cause be remanded to the circuit court so that the petition may be filed and subject to first stage postconviction proceedings.

¶ 17 The Act provides for a three stage process by which a defendant may assert his conviction was the result of a substantial denial of his constitutional rights. *People v. Domagala*, 2013 IL 113688, ¶ 32. The Act generally contemplates the filing of only one petition. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009); 725 ILCS 5/122-3 (West 2018). In order to file a successive postconviction petition, a defendant must first obtain "leave of court." See 725 ILCS 5/122-1(f) (West 2018); *People v. Tidwell*, 236 Ill. 2d 150, 157 (2010).

¶ 18     Here, although defendant labeled his *pro se* filing as a motion for leave to file a successive petition, there is no indication in the record, and the parties do not allege, that defendant previously filed a postconviction petition in the present case. Thus, despite its label, the filing was a not a successive petition for purposes of the Act.

¶ 19     The question before this court is what type of relief defendant warrants going forward. Defendant, as discussed, asks this court to remand so that his petition may be filed and subjected to first stage review under the Act. The State responds that we may affirm the circuit court's order denying defendant relief under the Act, address the claims raised in the petition on the merits, and find them to be frivolous and patently without merit.

¶ 20     The Act provides in relevant part that, "[w]ithin 90 days after the filing and docketing of each petition," the circuit court must review the petition and determine whether it "is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). If the petition is not dismissed within 90 days, counsel is appointed and the case advances to the second stage. 725 ILCS 5/122-2.1(a), (b) (West 2018).

¶ 21     In the case at bar, the circuit court did not evaluate defendant's petition to determine whether it was frivolous or patently without merit, because although defendant was not required to obtain leave of court, he filed a motion for leave to file a successive petition. Because the court denied defendant leave to file the petition, it was never "filed" within the meaning of the Act, and therefore, the 90-day time period never began.

¶ 22     *People v. Anderson*, 2015 IL App (2d) 140444, is instructive. In that case, we found that when a defendant seeks leave of court to file a successive postconviction petition and the court denies the motion, the proposed petition attached to the motion is not considered " 'filed' " and

therefore does not trigger the 90-day period. *Id.* ¶¶ 34-35. In reaching that conclusion, we relied on our supreme court's holding in *Tidwell*, where the court noted that " 'a successive postconviction petition will not be considered 'filed,' as that term is used in the statute, until leave is granted; notwithstanding the circuit clerk's reception and acceptance of the petition.' " *Id.* ¶ 34 (quoting *Tidwell*, 236 Ill. 2d at 159). We therefore concluded that the defendant's petition was "not officially docketed" where, "as per [the] *defendant's own request*," he filed a motion for leave to file a successive petition and the court denied that request. (Emphasis in original.) *Id.* ¶ 35.

¶ 23      In the case at bar, although defendant was not required to obtain leave of court to file his proposed postconviction petition, he nevertheless sought such leave. As the circuit court denied that leave, the petition was never filed within the meaning of the Act. See *id.* (defendant's petition was "not officially docketed" where he filed a motion for leave to file a successive petition and the court denied that request). The cause must therefore be remanded for first stage proceedings. Accordingly, we vacate the order denying defendant leave to file a successive postconviction petition and remand the case so that defendant's *pro se* petition may be filed. See 725 ILCS 5/122-2.1(a) (West 2018).

¶ 24      For the foregoing reasons, we vacate the circuit court's order denying defendant leave to file a successive postconviction petition and remand for further proceedings under the Act.

¶ 25      Vacated and remanded.